IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN B.[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 6:20-cv-01168-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff John B. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for social security disability insurance benefits. Full consent to magistrate jurisdiction was entered on July 21, 2020 (Dkt. #4). For the reasons provided below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Plaintiff was born on February 10, 1975 and was 42 years old on his date last insured. Tr. 16. He has at least a high school education. He alleges he is unable to sustain fulltime work activity because of significant lower-back problems, including degenerative disc disease of the lumbar spine, and status post-surgeries and their sequela.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

On May 9, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 31, 2012.[2] This claim was denied initials and upon reconsideration on December 13, 2017. Thereafter, he filed a written request for a hearing, which was held before an Administrative Law Judge (ALJ) on July 16, 2019, in Eugene, Oregon. Tr. 10.

The ALJ issued an unfavorable decision on July 30, 2019. Tr. 18. The ALJ concluded Plaintiff was unable to perform any past relevant work, but he was capable of performing other work that exists in significant numbers the national economy, Telephone Information Clerk, Printed Circuit Board Assembler, and Document Preparer. Tr. 17. The Appeals Council denied review, making the ALJ's decision the final agency decision. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

---

[2] A prior application filed by the Plaintiff was denied on August 9, 2016, leading Plaintiff to amend his alleged onset date in this case to post-date the unfavorable decision. Tr. 10, 31. The ALJ's written decision mistakenly considered Plaintiff's claim from the initial alleged onset date of December 31, 2012 through December 31, 2017. Tr. 10. Because the ALJ considered Plaintiff's functioning during a longer period that included the correct relevant period, this error was harmless as it did not affect the outcome of this case. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Plaintiff acknowledged the ALJ's oversight and did not allege any prejudice as a result (Dkt. #16 at 2, fn. 2). Thus, any assignment of harmful error on this issue is deemed waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

2 - Opinion and Order

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. Tr. 12.

2. Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 2012, through his date last insured of December 31, 2017. Tr. 13.

3. Plaintiff has the following severe impairment: degenerative disc disease of the lumbar spine, and status post-surgeries and their sequela. Tr. 12.

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 13.

5. Through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, but never stoop, kneel, crouch, and crawl. He can tolerate no exposure to vibrations or workplace hazards, such as machinery or unprotected heights. He requires the option to sit or stand at will while remaining on task. Tr. 13.

6. Plaintiff is unable to perform any past relevant work. Tr. 16.

7. Plaintiff was born on February 10, 1975 and was 42 years old, which is defined as a younger individual age 18-49. Tr. 16.

8. Plaintiff has at least a high school education and is able to communicate in English. Tr. 16.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. Tr. 16.

10. Considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed. Tr. 16.

11. Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of December 31, 2012, through his date last insured of December 31, 2017. Tr. 17.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53

5 - Opinion and Order

F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

6 - Opinion and Order

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.
2. Whether the ALJ properly evaluated lay witness testimony given by Plaintiff's wife.

For the following reasons, the Court finds that the ALJ properly evaluated the evidence. The decision of the Commissioner is affirmed.

I. **The ALJ properly evaluated Plaintiff's subjective symptom testimony; he gave clear and convincing reasons to discount the severity of his symptoms and his conclusions are supported by substantial evidence.**

Plaintiff challenges the ALJ's treatment of his testimony regarding his limitations and severity of his symptoms. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any

7 - Opinion and Order

subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Here Plaintiff testified that during the relevant period between his alleged onset date of August 2016 and date last insured of December 2017, his fatigue and pain would fluctuate: "One day I would be okay; you know, the next day, I might be all right; and the week after that, I might be down for, you know, two or three days or a week or more." Tr. 47-8. He stated that he was lying down "back then," on an average day, "two, three hours," but "I would spread it out a little bit, try to get up, move around, and stretch a little bit here and there." Tr. 54-6.

The ALJ gave three clear and convincing reasons to reject the severity of Plaintiff's alleged symptoms: 1) "the objective medical record is not consistent with the extent of the limitations he alleged"; 2) "his treatment has been conservative"; and 3) his "alleged limitations are not fully supported by his reported activities." Tr. 14-15. These reasons were clear and convincing and supported by substantial evidence.

First, the ALJ specifically stated that the medical record "does not support the severity of the claimant's symptoms. With regard to degenerative disc disease, he complained of low back pain with radiation into his lower legs with associated numbness and weakness." Tr. 14. The ALJ then discussed Plaintiff's medical imaging studies, MRI's, decompression surgery, and further treatment, including a post-surgical MRI, which showed "only minimal degenerative changes in the thoracic spine." Tr. 14-15. The ALJ noted the results of subsequent examinations, the

attempts at conservative management, and the ultimate decision for a second lumbar decompression in December 2018, a year after the date last insured. Tr. 14. Ultimately, the ALJ concluded that "the above treatment record shows that the claimant's allegations are not consistent with the medical record. Despite the claimant's degenerative disk disease, his range of motion was only mildly limited, and he had a variable gait, with generally intact muscle strength, sensation, and reflexes." Tr. 15. Thus, the ALJ clearly identified the symptoms he determined were not supported, and he cited to specific parts of the record for his adverse conclusion.

In addition, the ALJ's decision contains a thorough discussion of clinical findings and MRI imaging documenting Plaintiff's "mild to moderate degenerative disc disease" as well as examination findings. Although Plaintiff's MRI results and examinations showed worsening symptoms right around the time his date last insured expired, the ALJ's conclusion that Plaintiff's allegations were not consistent with the medical record was reasonable and supported by substantial evidence.

Second, the ALJ determined that Plaintiff's daily activities during the relevant period reflected greater functioning than he alleged. An ALJ may consider a claimant's activities when evaluating the reliability of the claimant's symptom allegations. 20 C.F.R. § 404.1529(c)(3)(i) (2017). There are two grounds for using daily activities to discount a claimant's testimony: (1) activities "contradict [the claimant's] other testimony" or (2) activities "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The first basis applies here. An ALJ may reject a claimant's symptom allegations by referencing "contradictions in the claimant's own testimony about his activities of daily living." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

9 - Opinion and Order

Here, the ALJ pointed out that Plaintiff's allegations regarding the severity of his symptoms were inconsistent with his reported activities in the medical and other evidence of record. "The claimant indicated that he could perform adequate self-care, prepare simple meals, do household chores, and play video games." Tr. 15. In addition, "[t]he record also indicated that the claimant stays at home caring for his children, does stretching, yoga, and goes fishing." Tr. 15. During the ALJ hearing Plaintiff testified that during the relevant period he was still able to drive for an hour and a half and participate in family vacations such as trips to the coast. Tr. 14, 34-39. In June 2017, Dr. Gadzhiev noted that Plaintiff was a "stay at home dad" with three children who "stays active with kids," and he "[e]njoys hunting and fishing (went fishing last weekend)." Tr. 481. The ALJ could reasonably find Plaintiff's activities during the relevant period, which included some vacations, fishing, yoga, and caring for two active young sons showed "a higher level of function than that alleged by the claimant." Tr. 15. This was a valid reason for the ALJ to discount Plaintiff's allegations regarding the severity of his back pain during the relevant period.

Third, the ALJ's conclusion that Plaintiff's mostly conservative approach to treatment was inconsistent with his allegations was supported by substantial evidence. The amount and type of treatment is an important indicator of the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3). Here, the ALJ determined that, "[b]y way of treatment, the claimant has tried multiple treatment modalities including physical therapy, chiropractic care, TENS therapy, stem cell therapy, cannabis, steroid injections, as well as over-the-counter and prescription pain medication. Tr. 15. The ALJ concluded, based on his review of the longitudinal record, that "[o]verall, his treatment has been conservative, largely over-the-counter and prescription medication. He has not generally received the type of medical treatment one

10 - Opinion and Order

would expect for a totally disabled individual." Tr. 15. This was a valid reason to discount the severity of Plaintiff's alleged subjective symptoms.

The Court finds that the ALJ sufficiently reviewed the evidence, and while Plaintiff may disagree with the ALJ's ultimate conclusions, the ALJ's interpretation and conclusions are not unreasonable as a matter of law. The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Here, Plaintiff's interpretation of the evidence is reasonable, but so is the ALJ's interpretation. The ALJ gave clear and convincing reasons, and substantial evidence supports the ALJ's assessment regarding Plaintiff's subjective symptom testimony.

## II.   ALJ properly evaluated and accommodated the lay witness testimony given by Plaintiff's wife.

Plaintiff's wife is a nonmedical source under the Agency's regulations. 20 C.F.R. §404.1502(e). An ALJ is required to "only give germane reasons" to discount such lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the ALJ acknowledged the presence of multiple third-party statements in the record and indicated he had considered "these supportive statements and observations regarding the claimant's impairments and associated decreased work capacity when determining the above residual functional capacity." Tr. 15-16. In other words, the ALJ did not reject this lay witness statement, but indicated he had considered it in formulating the residual functional capacity limiting Plaintiff to a range of sedentary work with a sit-stand option.

In June 2017, Plaintiff's spouse, Lori B., submitted a Third-Party Function Report in which she alleged Plaintiff's back pain interfered with his ability to sleep due to restlessness, and he was tired all the time. Tr. 274. She indicated lifting and standing "for long periods of time" caused him increased pain, and "walking too much" caused tingles in his legs with numbness. Tr.

11 - Opinion and Order

274. She reported that in a typical day, he cared for their two school-aged kids by feeding the kids breakfast each morning and getting them dressed and off to school. Tr. 275. Plaintiff also picks the kids up from school, and "watche[d] them after school till I get home." Tr. 275. Plaintiff was also responsible for feeding their two cats. Tr. 275. She indicated Plaintiff was able to prepare meals, and could perform household chores including laundry, vacuuming and cooking. Tr. 276. However, yard work was too hard on his back. Tr. 276. She reported Plaintiff was able to go outside daily, walk, drive a car, ride in the car, and shop in stores. Tr. 276-77. She described his social activities as including "go[ing] for coffee and talk, see[ing] movies, [going] out to eat." Tr. 278. Finally, she wrote that Plaintiff "does minimal household chores" during a typical day, and "rests [his] back till [their] kids come home" from school. Tr. 274-80. She indicated his parents sometimes help watch the kids, so he can "be off his feet." Tr. 275.

Significantly, although Mrs. B. mentioned Plaintiff's need to "be off his feet" or "rest[] [his] back" at times throughout the day, nowhere in her Third Party Function Report did she expressly indicate that Plaintiff needed to lie down for long periods of time (or even at all). Tr. 274-81. She also did not describe any limitation with respect to how long Plaintiff could sit throughout the day, if he could switch positions. Tr. 281. She simply wrote that "too much sitting [sic] numbness in legs, restless legs, lower back pain." Tr. 281.

Plaintiff contends that the RFC in this case does not include any limitations allowing Plaintiff to rest his back as observed by his wife, and thus the ALJ erred by failing to articulate germane reasons to reject her lay witness statement. However, her statement does not describe any specific need for the Plaintiff to "lie down" during the day, rather than simply sit and otherwise get off his feet. Therefore, the ALJ was not required to provide a germane reason to discount this allegation.

Accordingly, the ALJ did not err in his consideration of Mrs. B.'s lay witness statement, which the ALJ could reasonably find consistent with the RFC limiting Plaintiff to sedentary work with a sit-stand option. Even if the ALJ should have identified a germane reason for rejecting her lay witness statement, however, any potential error was harmless. *See Molina*, 674 F.3d at 1111 (Where an ALJ failed to provide germane reasons to discount a witness's statement, the error is unlikely "to affect the outcome in situations where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited.")

## ORDER

The ALJ properly evaluated the evidence. The final decision of the Commissioner is affirmed.

It is so ORDERED and DATED this 4 day of March, 2022.

MARK D. CLARKE
United States Magistrate Judge